UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AMANDA BRYANT (SMITH), ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:17-cv-01850-JMS-TAB |
| ) | |
| NANCY A. BERRYHILL, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Amanda Bryant (formerly known as Amanda Jo Smith) applied for disability insurance benefits from the Social Security Administration ("SSA") on August 13, 2014, alleging an onset date of August 11, 2014. [Filing No. 13-6 at 4.] Her application was initially denied on October 10, 2014, [Filing No. 13-5 at 2], and upon reconsideration on November 13, 2014, [Filing No. 13-5 at 7]. Administrative Law Judge Blanca B. de la Torre (the "ALJ") held a hearing on April 6, 2016. [Filing No. 13-2 at 45-88.] The ALJ issued a decision on May 31, 2016, concluding that Ms. Bryant was not entitled to receive disability insurance benefits. [Filing No. 13-2 at 20-42.] The Appeals Council denied review on May 20, 2017. [Filing No. 13-2 at 2-4.] On June 6, 2017, Ms. Bryant timely filed this civil action, asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g). [Filing No. 1.]

## I.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an

1

inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id. at 217*.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Ms. Bryant was 33 years old at the time she applied for disability insurance benefits. [Filing No. 13-6 at 4.] She completed high school and contemporaneously earned a nurse assistant certificate. [Filing No. 13-2 at 33.] She previously worked as a cashier, certified nurse assistant, donut icer, food sales clerk and hand packager. [Filing No. 13-2 at 36.][1]

---

[1] Both parties provided a detailed description of Ms. Bryant's medical history and treatment in their briefs. [Filing No. 17; Filing No. 21.] Because that discussion implicates sensitive and otherwise confidential medical information concerning Ms. Bryant, the Court will simply incorporate those facts by reference and only detail specific facts as necessary to address the parties' arguments.

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Ms. Bryant is not disabled. [Filing No. 13-2 at 37.] The ALJ found as follows:

- At Step One, the ALJ found that Ms. Bryant has not engaged in substantial gainful activity[2] since December 31, 2011, the alleged onset date. [Filing No. 13-2 at 25.]

- At Step Two, the ALJ found that Ms. Bryant has the following severe impairments: obesity, history of resection, chemotherapy and radiation for left parieto-occipital spendymoblastoma, history of seizure disorder, borderline intellectual functioning and depressive disorder. [Filing No. 13-2 at 25-26.]

- At Step Three, the ALJ found that Ms. Bryant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [Filing No. 13-2 at 26.]

- After Step Three but before Step Four, the ALJ found that Ms. Bryant has the RFC to "perform work at all exertional level[s] but with the following non-exertional limitations: [t]he claimant is able to stoop, crouch and kneel frequently. She can climb stairs and ramps, and balance occasionally. She cannot work on ladders, ropes or scaffolds, or crawl. The claimant cannot tolerate concentrated exposure to extreme heat, extreme cold, or respiratory irritants, such as fumes, odors, gases and poor ventilation. She can tolerate Noise Levels 1-3 as described by the Dictionary of Occupational Titles (DOT) and Selected Characteristics of Occupations in the DOT (SCODOT). The claimant cannot engage in commercial driving. She cannot work around work place hazards such as unprotected heights or dangerous, moving machinery. She cannot work in proximity to fire or open bodies of water, or have strobe/flashing lights in the immediate work area. The claimant is able to understand, remember and carry out short, simple, repetitive instructions. She is able to sustain attention/concentration for two-hour periods at a time for eight hours in the workday on short, simple repetitive tasks. The claimant is able to use judgment in making work-related decisions commensurate with the type of work above. She requires an occupation with a set routine and procedures, and few changes during the workday. She is able to maintain regular attendance and be punctual within customary tolerances." [Filing No.13-2 at 31-32.]

- At Step Four, the ALJ concluded, after considering Ms. Bryant's age, education, work experience, and RFC and relying on the testimony of the

---

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

vocational expert ("VE"), that Ms. Bryant is capable of performing her past relevant work as a cashier and donut icer. [Filing No. 13-2 at 36.]

### III.
### DISCUSSION

Ms. Bryant makes three assertions of error regarding the ALJ's decision, each of which the Court will consider in turn.

**A. Whether the ALJ Improperly Evaluated Listing 12.05(C)**

In connection with her first argument, Ms. Bryant asserts that the ALJ erred by weighing the IQ scores in the record instead of deciding whether there was a valid IQ score in the record between 60 and 70, inclusive, and that the ALJ selectively reviewed the evidence of Ms. Bryant's deficits in adaptive functioning. [Filing No. 17 at 14-18.] With regard to the specific requirements of the listing, which will be discussed below, Ms. Bryant argues that "there should be no question that the first and fourth requirements are met." [Filing No. 17 at 18.]

The Commissioner argues that the ALJ reasonably determined that Ms. Bryant did not show significant subaverage general intellectual functioning with deficits in adaptive functioning during the developmental period. [Filing No. 21 at 9.]

Ms. Bryant argues in her reply brief that the Commissioner "does not dispute the first and fourth [requirements] of Section 12.05(C) are met." [Filing No. 22 at 3.]

Before responding to the specific arguments, the Court will address the governing standard. In order to meet or equal an impairment identified in the listings, a claimant must establish, with objective medical evidence, all of the criteria specified in the listing. *See* 20 C.F.R. §§ 404.1525, 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) ("The applicant must satisfy all of the criteria in the Listing in order to receive an award of" benefits at step three). Both parties agree that the ALJ applied the correct version of the listing in the decision and that the Court should review the decision using the same. [Filing No.

17 at 16; Filing No. 21 at 6-7.] One of the introductory paragraphs in Section 12.00 specifically addresses the listing in Section 12.05:

> Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description of the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

20 C.F.R. pt. 404, subpt. P, app. 1 at Section 12.00(A). Section 12.05(C) reads:

> 12.05 *Intellectual disability*: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C or D are satisfied.
> …
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

*Id.* at Section 12.05(C). Ms. Bryant has articulated (and the Commissioner does not dispute) the listing sets forth four requirements for entitlement to benefits:

> 1. Significantly subaverage general intellectual functioning;
> 2. Deficit in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22;
> 3. A valid verbal, performance, or full scale IQ of 60 through 70; and
> 4. A physical or other mental impairment imposing an additional and significant work-related limitation of function.

[Filing No. 17 at 17.] The Court recognizes that there are some minor stylistic discrepancies in how the courts have numbered or listed the requirements, but will analyze them herein following Ms. Bryant's characterization above for purposes of clarity.[3]

---

[3] Ms. Bryant confuses her own numbering of the requirements in her brief, referring to the second requirement when discussing the third and vice versa. [Filing No. 17 at 19-20.] However, the Court will reference the numbering according to the sequence illustrated above in this Entry.

First, Ms. Bryant must demonstrate "significantly subaverage intellectual functioning." Ms. Bryant contends that "there should be no question that the first and fourth requirements are met." [Filing No. 17 at 18.] Ms. Bryant offers as evidentiary support only that "[a]ccording to psychologist Noah Spring, Psy.D., who evaluated [Ms.] Bryant at the Commissioner's request, [Ms.] Bryant has a full scale IQ of 70, which is in the 2nd percentile." [Filing No. 17 at 18 (internal citations removed) (citing Filing No. 13-18 at 79).] Ms. Bryant argues in her reply brief that the Commissioner "does not dispute the first and fourth [requirements] of Section 12.05(C) are met. [Filing No. 22 at 3.] However, the Court does not agree with this characterization. The Commissioner states that the ALJ reasonably determined that Ms. Bryant did not show significant subaverage general intellectual functioning with deficits in adaptive functioning during the developmental period, which conflates analysis of the first and second requirements. [Filing No. 21 at 9.] However, this argument conflating analysis of the first two requirements is common practice of many courts. The Court finds that the Commissioner has adequately contested whether the first requirement is met, and will address the ALJ's determination on the merits..

The ALJ provided a fairly detailed analysis of whether the first requirement of Listing 12.05(C) is met or equaled in this claim. [Filing No. 13-2 at 28-31.] The ALJ concluded that "there is no 'significant subaverage intellectual functioning,' as required by the diagnostic description." [Filing No. 13-2 at 29.] In reaching that conclusion, the ALJ cited evidence consisting of IQ testing on five different occasions (including three tests prior to age twenty two and two tests after) and diagnostic impressions from four different examining doctors. [Filing No. 13-2 at 29-30.] Among the evidence cited by the ALJ is the only evidence offered by Ms. Bryant to support that the first requirement was met, the IQ testing performed by Dr. Spring, which the ALJ acknowledged was consistent with the listing. [Filing No. 13-2 at 29.] However, the ALJ

7

noted that even Dr. Spring did not conclude that Ms. Bryant meets the criteria for an intellectual disability, absent additional medical and educational information unavailable at the time. [Filing No. 13-2 at 29-30.] The ALJ reviewed the additional medical and educational information available to her and assigned "more weight to the scores before age 22 and to the conclusions in two neuropsychological evaluations, in 1992 and in 2015, as being more reliable in assessing the nature and severity of the claimant's neurocognitive disorder." [Filing No. 13-2 at 30.] To determine whether substantial evidence exists, the Court reviews the record as a whole but is not allowed to substitute its judgment for the ALJ's "by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Williams v. Apfel*, 179 F.3d 1066, 1071-72 (7th Cir. 1999) (internal quotations omitted). The Court finds that the ALJ weighed the conflicting evidence offered by Ms. Bryant and declined to follow it in light of the other evidence of record that supported the conclusion that the first requirement of the listing was not met.

To the extent that Ms. Bryant's argument could be construed to mean that a valid IQ score alone satisfied the first requirement of the listing in the diagnostic criteria, "significant subaverage intellectual disability," the Court is not persuaded and Ms. Bryant cites no authority for such a proposition. Ms. Bryant makes related arguments that the presence or absence of a diagnosis of "intellectual disability" does not determine whether the listing is met, [Filing No. 22 at 6 (citing *Johnson v. Astrue*, 2011 WL 2006432 at *1 (S.D. Ind. May 23, 2011))], and that an IQ test need not be administered before the claimant's twenty second birthday to be considered determinative ([Filing No. 22 at 9 (citing *Miller v. Colvin*, 2014 WL 4105034, at *12-13 (N.D. Ind. Aug. 19, 2014)).] However, the ALJ did not find either the presence or absence of a specific diagnosis or the lack of a qualifying IQ score prior to age twenty two to be dispositive of the issue alone, but

rather weighed both in reaching her conclusion. The evidence need not be dispositive in order to be relevant in evaluating the diagnostic criteria. In *Hall v. Florida,* the Supreme Court discussed the definition of intellectual disability in a capital punishment case, noting that "the definition of intellectual disability by skilled professionals has implications far beyond the confines of the death penalty: for it is relevant to education, access to social programs, and medical treatment plans. In determining who qualifies as intellectually disabled, it is proper to consult the medical community's opinions." *Hall v. Florida*, 134 S. Ct. 1986, 1993 (2014). The Supreme Court further noted in evaluating whether a Florida statute was too rigid in determining whether "significantly subaverage intellectual functioning" could be confined solely to the absence of an IQ score that "[p]ursuant to this mandatory cutoff, sentencing courts cannot consider even substantial and weighty evidence of intellectual disability as measured and made manifest by the defendant's failure or inability to adapt to [her] social and cultural environment, including medical histories, behavioral records, school tests and reports, and testimony regarding past behavior and family circumstances. This is so even though the medical community accepts that all of this evidence can be probative of intellectual disability, including for individuals who have an IQ test score above 70." *Id.* at 1994; *see also Allen v. Colvin*, 2016 WL 1029313 at *3-4 (S.D. Ind. March 15, 2016) (suggesting that "significantly subaverage intellectual functioning" itself need be established during the developmental period and distinguishing a case about the sufficiency of IQ scores after age twenty two where there are conflicting IQ scores from the developmental period). The Court finds that the ALJ applied the correct legal standard and weighed the relevant evidence, as required.

Turning to the second requirement, the Court agrees with Ms. Bryant that the ALJ selectively reviewed evidence of Ms. Bryant's deficits in adaptive functioning. [Filing No. 17 at

20-25.] The ALJ not only concluded that the first requirement was not met, but also found "[i]n addition there is *no evidence* of 'deficits in adaptive functioning initially manifested during the developmental period' that is, before age 22 [the second requirement of the listing]." [Filing No. 13-2 at 30 (emphasis added).] Ms. Bryant presents fairly significant evidence of deficits in adaptive functioning. [Filing No. 17 at 21-25.] The Court agrees that the ALJ failed to cite any evidence that was contrary to her conclusion that the second requirement was not met, even if she did cite relevant and likely substantial evidence in support of her conclusion. [Filing No. 13-2 at 30-31.] However, because the ALJ properly weighed conflicting evidence in finding the first requirement was not met, the argument is not determinative here.

As to the third requirement, the Court also agrees with Ms. Bryant that the presence of a single valid verbal, performance or full scale IQ score of 60 through 70 is all that is required. [Filing No. 17 at 19.] However, the Court finds Ms. Bryant's argument challenging the ALJ's opinion on this requirement misplaced. The Court agrees there is no evidence to suggest that the score was not valid and that the Commissioner's argument to the contrary and supporting authority is readily distinguishable. [Filing No. 21 at 7-9.] However, the Court does not read the ALJ's decision as ever stating that the IQ score was not "valid" or that the third requirement of the listing was not met. Because the Court reads the ALJ's decision as weighing the IQ scores in support of her finding that the first requirement was not met, rather than the third requirement, the Court does not agree with Ms. Bryant that there was legal error. For the reasons stated above, the Court finds that the ALJ's inquiry into the conflicting IQ scores applied both relevant evidence and the correct legal standard in the context of its proper analytical place in the decision.

The parties do not dispute that the fourth requirement of the listing was met. [Filing No. 17 at 18; *see* Filing No. 21.]

The ALJ's conclusion with respect to Listing 12.05(C) is supported by substantial evidence that the first requirement of the listing is not met. The regulations require that Ms. Bryant demonstrate all of the requirements of the listing, so any alleged error with respect to the other requirements of Listing 12.05(C) is not material. Accordingly, the Court does not agree with Ms. Bryant that the ALJ erred at Step Three.

### B. Whether the ALJ Failed to Include Limitations Described in a Third Party Report in the RFC Assessment or in the Hypothetical Question to the Vocational Expert

Ms. Bryant argues that the ALJ agreed that Ms. Bryant has the limitations described by Ms. Bryant's mother, Ms. Clark, in a third party report but failed to include those limitations in the ALJ's RFC assessment or in the hypothetical question to the VE that the ALJ relied upon to find Ms. Bryant not disabled at step four of the sequential evaluation process. [Filing No. 17 at 23-26.] Ms. Bryant asserts that the ALJ agreed with the limitations in the third party report based on the ALJ's statement "that 'I agree with Ms. Clark's report that the claimant has limitation in several areas, but find that the report does not warrant additional restrictions to [Ms. Bryant's] RFC.'" [Filing No. 17 at 26 (quoting Filing No. 13-2 at 36).] Ms. Bryant suggests the report supported additional limitations not contained in the RFC, including limitations in social interaction, needing instructions repeated, and needing to be accompanied when she leaves the house. [Filing No. 17 at 26-27.]

The Commissioner argues that Ms. Bryant misunderstands the ALJ's decision as fully crediting Ms. Clark's statements and that the ALJ reasonably weighed the statements against the evidence. [Filing No. 21 at 12.]

The Court agrees with the Commissioner that Ms. Bryant misunderstands the ALJ's decision as fully crediting Ms. Clark's statements. The ALJ noted that Ms. Clark's report suggested Ms. Bryant was more dependent on her husband than even Ms. Bryant acknowledged.

[Filing No. 13-2 at 36.] However, the ALJ noted conflicting evidence that Ms. Bryant "remained very functional both at home and at work." [Filing No. 13-2 at 36.] The ALJ expressly assigned the report only "some weight," indicating she agreed that Ms. Bryant "has limitation in several areas, but finds that the report does not warrant additional restrictions to [Ms. Bryant's] RFC." [Filing No. 13-2 at 36.] The Court finds that because the ALJ did not give full weight to the limitations in the report, given the full context of the finding that Ms. Bryant quotes above, the ALJ did not err in not incorporating the limitations she rejected in the RFC or in the hypothetical to the VE.

### C. Whether the ALJ Failed to Evaluate Ms. Bryant's Mother's Testimony

In a related argument, Ms. Bryant contends that the ALJ failed to evaluate Ms. Clark's testimony, based on the applicable but since rescinded Social Security Ruling ("SSR") 06-03p. [Filing No. 17 at 28.] The parties do not dispute that the ruling was controlling at the time of the decision. [Filing No. 17 at 28; Filing No. 21 at 11-12.] The ruling states in regard to evidence from "other sources" including parents:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p. Ms. Bryant references portions of Ms. Clark's testimony as being ignored in the decision, including that Ms. Bryant had twice lost a job related to her comprehension and pace, has issues with agitation related to her comprehension, and has issues understanding, remembering, and carrying out simple instructions. [Filing No. 17 at 30-31.]

The Commissioner argues that the ALJ does not need to provide a written evaluation of every medical record or every statement given by a witness. [Filing No. 21 at 11.] The Commissioner further argues that the ALJ at least acknowledged a portion of Ms. Clark's testimony and that Ms. Bryant "does not explain how Ms. Clark's testimony, which was in large part duplicative of Ms. Clark's functional report and [Ms. Bryant's] school records, would have overcome the relevant medical evidence the ALJ considered in making her decision." [Filing No. 21 at 13-14.]

The Court agrees with the Commissioner. The ALJ's decision taken as a whole reasonably explains the weight given to Ms. Clark's statements. The ALJ "need not provide a written evaluation of every piece of evidence that is presented." *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988). The ALJ is not required to address every piece of evidence in each section of her decision, nor repeat the factual analysis throughout each section. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses"). As noted above, the ALJ evaluated Ms. Clark's third party report and gave it only "some weight." [Filing No. 13-2 at 35.] The Court agrees that the testimony cited by Ms. Bryant is largely duplicative of the third party report, which noted Ms. Bryant needs to be accompanied in certain situations outside of the house, [Filing No. 13-8 at 45], and has issues with following instructions, memory and "getting along with others" including that Ms. Bryant "gets mad easily because she doesn't understand what people mean when they say something or she takes it the wrong way [and] she says things without thinking that she should keep to herself," [Filing No. 13-8 at 46]. The ALJ acknowledged that Ms. Bryant has issues with comprehension and memory in finding that Ms. Bryant had moderate difficulties with regard to concentration, persistence, and pace, [Filing No. 13-2 at 28],

13

and provided limitations consistent with the finding in her RFC, [Filing No. 13-2 at 31-32], neither of which is directly challenged by Ms. Bryant. The ALJ further found that Ms. Bryant had mild restriction in activities of daily living, noting that Ms. Clark "reported that her husband has a greater role in performing household chores than [Ms. Bryant] admits", and has no difficulties in social functioning. [Filing No. 13-2 at 27-28.] Again, neither finding is directly contested by Ms. Bryant. The Court finds no reason why the ALJ would need to articulate again her reasons for only giving "some weight" to Ms. Clark's largely duplicative statements just because they were made in the form of a report and reiterated in testimony.

Ms. Bryant notes portions of Ms. Clark's testimony that are not duplicative of the third party report, specifically that Ms. Bryant has lost two jobs due to issues with her comprehension and pace. [Filing No. 17 at 32.] As noted above, the ALJ did find and incorporate moderate limitations with pace. Moreover, the ALJ thoroughly discussed Ms. Bryant's work history, acknowledging that Ms. Bryant had been terminated from two jobs at Menards and Nice-Pak, but found it significant that all of her other jobs, including the work the ALJ found that Ms. Bryant could return to within the framework of her RFC (as a donut icer and cashier[4]), ended not due to Ms. Bryant's limitations, but because she had moved. [Filing No. 13-2 at 33-34.] Again, while the ALJ did not discuss all of this in specifying the weight given Ms. Clark's testimony in particular, the Court finds that the decision, when read as a whole, is sufficiently clear to allow the Court a meaningful review of the ALJ's reasoning. For the reasons specified above, the Court does not find legal error, including that SSR 06-03p was not followed.

---

[4] Ms. Bryant was a cashier at more than one place of employment. She did lose one job as a cashier at Menards, potentially related to her impairments. [Filing No. 13-2 at 33.] However, her job as a cashier at Village Pantry and Mac's Convenience Store ended due to her moving. [Filing No. 13-2 at 34.]

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* at 274. Taken together, the Court can find no legal basis presented by Ms. Bryant to reverse the ALJ's decision that she was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

Date: 1/22/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jill.julian@usdoj.gov

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov

Timothy J. Vrana
TIMOTHY J. VRANA LLC
tim@timvrana.com